Michael Dwayne BROWN,
Petitioner–Appellant,

v.

Ronald ANGELONE, Respondent–
Appellee.

Jesse James PRITCHARD, Jr.,
Petitioner–Appellant,

v.

Ronald ANGELONE, Director,
Respondent–Appellee.

Nos. 96–7173, 96–7208.

United States Court of Appeals,
Fourth Circuit.

Argued April 7, 1998.

Decided July 14, 1998.

**ARGUED:** Neal Lawrence Walters, Appellate Litigation Clinic, University of Virginia School of Law, Charlottesville, Virginia, for Appellants. Pamela Anne Rumpz, Assis-

tant Attorney General, Office of the Attorney General, Richmond, Virginia, for Appellee. **ON BRIEF:** Richard Cullen, Attorney General of Virginia, Richmond, Virginia, for Appellee.

Before MURNAGHAN, NIEMEYER, and MOTZ, Circuit Judges.

Reversed by published opinion. Judge MOTZ wrote the opinion, in which Judge MURNAGHAN and Judge NIEMEYER joined.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

This appeal concerns the timeliness of an initial petition for a federal writ of habeas corpus filed shortly after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996. The district court concluded that the one-year limitation period mandated by that statute required dismissal of the petition, even though it would have been timely if filed the day prior to enactment of the new limitation period. We reverse.

### I.

On November 27, 1985, a state court convicted Jesse James Pritchard, Jr., an inmate, of attempted escape. Pritchard unsuccessfully pursued direct appeal and state post-conviction relief, both of which apparently were denied sometime in 1989, although the record before us does not indicate the exact dates of those rulings.

On April 24, 1996, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA). That statute

instituted a limitation period for filing habeas petitions, which provides in pertinent part:

A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review[.]

AEDPA § 101, 110 Stat. 1217; 28 U.S.C.A. § 2244(d)(1) (West Supp.1998). The statute permits several narrow exceptions to this one-year period, none of which apply here.

A month later, on May 24, 1996, Pritchard filed his first federal petition for habeas corpus relief pursuant to 28 U.S.C.A. § 2254 (West 1994 & Supp.1998). The district court held that the new one-year limitation period "compelle[d]" it to dismiss the petition as time barred. Pritchard moved for a certificate of appealability, which we granted.[1]

### II.

Congress has long provided state prisoners a statutory right to seek habeas relief in federal courts. *See* 28 U.S.C.A. § 2254(a) (a federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a state court" when the petitioner seeks relief "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"). Prior to enactment of the AEDPA, no statute limited the time available for a prisoner to file a habeas petition. Rule 9(a) of the Rules Governing Section 2254 Cases in the United States Dis-

---

**1.** Michael Dwayne Brown obtained a certificate of appealability to pursue the dismissal of his habeas petition on identical grounds. On September 12, 1992, Brown pled guilty to armed robbery in state court. Four years later, on July 9, 1996, Brown filed the petition for federal habeas relief at issue in this appeal. The district court, *sua sponte*, dismissed Brown's petition as time barred by the one-year statute of limitations in § 2244(d). In view of our holding here, that rationale was erroneous. Accordingly, we also reverse the dismissal of Brown's petition on the basis of § 2244(d). However, in a letter submitted to us immediately prior to oral argument, the

Commonwealth of Virginia suggested that Brown's appeal is moot because the petition providing the basis of his appeal is in fact a successive petition barred under the provisions of 28 U.S.C.A. § 2244(b) (West Supp.1998). We cannot properly assess this argument on the bare record currently before us. We note that our holding with regard to the applicability of § 2244(d) to Brown's petition does not constitute a determination that the petition is not successive. Of course, if Brown seeks to pursue this petition he must fully comply with the terms of § 2244(b).

trict Courts constituted the only pre-AEDPA time limit on such filings. The rule permits a district court to dismiss a petition

> if it appears that the state ... has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows that it is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the state occurred.

Habeas Corpus Rule 9(a). A prisoner could wait almost a decade to file his habeas petition without violating Rule 9(a). *See Lonchar v. Thomas,* 517 U.S. 314, 322–29, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).

■ Thus, as of April 23, 1996, a prisoner seeking federal habeas relief operated under no statutory time limitation; he awoke the next day, however, to a new habeas regime in which he has only one year from the date his conviction became final to file a federal petition. The Commonwealth argues, and the district court held, that this one-year limitation period applies to all petitions filed after the AEDPA's enactment and divests prisoners of their ability to seek federal habeas relief if they failed to file their petitions within one year of the date their convictions became final.

Under the Commonwealth's theory, in cases where state convictions became final within a year preceding the effective date of the AEDPA, inmates would have had whatever time remained in that year—even if only a few days—to seek federal relief once the statute went into effect. In cases like Pritchard's, where a conviction became final more than one year prior to the effective date of the AEDPA, the time to file a federal petition had apparently lapsed days, months, or years earlier, without any notice to the prisoner. For many prisoners the long-established right to seek federal habeas relief simply vanished at midnight on April 24, 1996. Thus, in Pritchard's case, as of April 24, 1996, the time to file a petition would have expired sometime in 1989 or 1990, even though the petition would have been timely if filed on April 23, 1996. Nevertheless, the Commonwealth maintains that applying the new limitation period in this manner, as the

district court did, "would have no retroactive effect" under *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Brief of Respondent–Appellee at 5.

The Supreme Court has held that the AEDPA's amendments to Chapter 153 of Title 28 of the United States Code generally apply to any petitions filed after the effective date of the Act, although not to petitions pending at the time of enactment. *See Lindh v. Murphy,* 521 U.S. 320, ——, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997) ("We hold that ... the new provisions of chapter 153 generally apply only to cases filed after the Act became effective."); *see also Breard v. Pruett,* 134 F.3d 615, 618 (4th Cir.) ("[f]or habeas petitions filed after April 24, 1996 ... the Chapter 153 provisions apply"), *cert. denied sub nom., Breard v. Greene,* —— U.S. ——, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). The AEDPA's amendments to Chapter 153 include the new § 2244(d) limitation period. Pritchard filed the petition at issue here on May 24, 1996, a month after the April 24 effective date of the AEDPA. Therefore, the provisions of the AEDPA, including the § 2244(d) time limitation, generally apply to his case. *Accord Calderon v. United States Dist. Ct. for the Cent. Dist. of Cal.,* 128 F.3d 1283, 1287 n. 3 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998).

Pritchard argues, however, that applying the new limitation period to bar habeas petitions based on convictions that became final more than a year before its effective date triggers the retroactivity concerns at issue in *Landgraf.* This contention presents a more complicated question. To answer it, we employ the analytical framework established in *Landgraf.*

■ Initially, we look to the statute itself to determine whether Congress has expressly directed that the limitation period applies in the manner urged by the Commonwealth. *See Landgraf,* 511 U.S. at 280, 114 S.Ct. 1483. As the Supreme Court noted in *Lindh,* the AEDPA "is not a silk purse of the art of statutory drafting." *Lindh,* 521 U.S. at ——, 117 S.Ct. at 2068. The statute itself

nowhere reveals Congress' intent concerning whether the statute applies as the Commonwealth proposes. Certainly nothing in the AEDPA indicates that Congress did intend "to foreclose prisoners who had no prior notice of the new limitations period from bringing" a habeas action. *United States v. Simmonds*, 111 F.3d 737, 745 (10th Cir.1997); *see also United States v. Flores*, 135 F.3d 1000, 1004–05 & n. 16 (5th Cir.1998). Consequently, absent an express congressional command, we follow "normal rules of construction" to determine whether the "statute's terms would produce a retroactive effect." *Lindh*, 521 U.S. at ——, 117 S.Ct. at 2063; *see Landgraf*, 511 U.S. at 280, 114 S.Ct. 1483.

In considering these rules of construction, *Landgraf* recognized the strong "traditional presumption against applying statutes affecting substantive rights, liabilities, or duties to conduct arising before their enactment." *Landgraf*, 511 U.S. at 278, 114 S.Ct. 1483. The Court noted, however, that unlike substantive rules, "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Id.* at 275, 114 S.Ct. 1483. This is so because procedural rules generally "regulate secondary rather than primary conduct" and create "diminished reliance interests." *Id.* Courts usually (but not invariably) regard limitation periods as procedural in nature. *Compare Sun Oil Co. v. Wortman*, 486 U.S. 717, 722–29, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988), *with Guaranty Trust Co. v. York*, 326 U.S. 99, 107–12, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Courts also normally apply the statute of limitations in operation at the filing of suit even if enacted subsequent to the conduct giving rise to the suit, effectively shortening the period available for a plaintiff to file. *See, e.g., St. Louis v. Texas Worker's Comp. Comm'n*, 65 F.3d

43, 45–46 (5th Cir.1995); *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 889–91 (2d Cir.1995).[2]

■ However, in making its "cautious statement about procedural rules," *Lindh*, 521 U.S. at ——, 117 S.Ct. at 2064, the *Landgraf* Court recognized that there is nothing talismanic about identifying a rule as procedural if its application results in genuinely retroactive effects. *See Landgraf*, 511 U.S. at 275 n. 29, 114 S.Ct. 1483. When application of a new limitation period would *wholly eliminate* claims for substantive rights or remedial actions considered timely under the old law, the application is "impermissibly retroactive." *Simmonds*, 111 F.3d at 745–46; *see also Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998); *Calderon*, 128 F.3d at 1286–87. The legislature cannot extinguish an existing cause of action by enacting a new limitation period without first providing a reasonable time after the effective date of the new limitation period in which to initiate the action. Indeed, the Supreme Court has stated that newly-enacted "statutes of limitations must allow a reasonable time after they take effect for the commencement of suits upon existing causes of action." *Block v. North Dakota*, 461 U.S. 273, 286 n. 23, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983) (internal quotation marks omitted).

As the Court explained almost a hundred years ago:

> It may be properly conceded that all statutes of limitation must proceed on the idea that the party has full opportunity afforded him to try his right in the courts. A statute could not bar the existing rights of claimants without affording this opportunity; if it should attempt to do so, it would not be a statute of limitations, but an unlawful attempt to extinguish rights arbitrarily, whatever might be the purport of

---

**2.** These courts expressly noted the special nature of the circumstances involved here and did not purport to create a rule for cases like the one at hand. *See St. Louis*, 65 F.3d at 46 n. 13 ("we do not face, and therefore do not address, the situation in which applying an amended statute of limitations would ... extinguish claims timely filed under a superseded statute of limitations"); *Vernon*, 49 F.3d at 889 n. 1 ("[w]e do not address the situation where Congress replaces a statute

of limitations with a shorter one that, if applied to a claim filed after the statute becomes effective, cuts off a plaintiff's right to sue without providing him with an opportunity to comply with the new period"). Moreover, the Fifth Circuit has explicitly held that the general rule stated in *St. Louis* does not apply in the precise context now before us. *See Flores*, 135 F.3d at 1003–04.

its provisions. It is essential that such statutes allow a reasonable time after they take effect for the commencement of suits upon existing causes of action; though what shall be considered a reasonable time must be settled by the judgment of the legislature, and the courts will not inquire into the wisdom of its decision in establishing the period of legal bar, unless the time allowed is manifestly so insufficient that the statute becomes a denial of justice. *Wilson v. Iseminger*, 185 U.S. 55, 62–63, 22 S.Ct. 573, 46 L.Ed. 804 (1902); *see also Block*, 461 U.S. at 284–86 & n. 23, 103 S.Ct. 1811; *Texaco, Inc. v. Short*, 454 U.S. 516, 528, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); *United States v. St. Louis, San Francisco & Texas Rwy. Co.*, 270 U.S. 1, 3, 46 S.Ct. 182, 70 L.Ed. 435 (1926); *Atchafalaya Land Co. v. F.B. Williams Cypress Co.*, 258 U.S. 190, 197, 42 S.Ct. 284, 66 L.Ed. 559 (1922); *Ochoa v. Hernandez Y Morales*, 230 U.S. 139, 161–62, 33 S.Ct. 1033, 57 L.Ed. 1427 (1913); *Sohn v. Waterson*, 84 U.S. (17 Wall.) 596, 598–600, 21 L.Ed. 737 (1873) (where a "literal interpretation of [the new statute of limitations] would have the effect of absolutely barring" an "action accrued more than the limited time before the statute was passed," courts should "presume[ ] that such was not the intent of the legislature").[3]

Moreover, in applying this principle, the Court has subsequently made clear that "when the practical consequences of extinguishing a right are identical to the consequences of eliminating a remedy, the ... analysis is the same." *Texaco*, 454 U.S. at 528, 102 S.Ct. 781 (describing *Wilson* as involving the extinguishment of a remedy); *see also Block*, 461 U.S. at 284–86 & n. 23, 103 S.Ct. 1811 (applying the *Wilson* principle to a limitation period in a new statute that assertedly eliminated a form of remedial relief).

Thus, in this case, the district court erred in applying the AEDPA's one-year limitation period in a manner that wholly eliminates a petitioner's right to pursue perhaps the most important remedy in our criminal justice system and " 'the best and only sufficient defence of personal freedom,' " *Lonchar*, 517 U.S. at 324, 116 S.Ct. 1293 (quoting *Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 95, 19 L.Ed. 332 (1869))—a writ of habeas corpus.

We hold that a prisoner whose statutory right to seek federal habeas relief accrued prior to the AEDPA must receive a reasonable period of time after the statute's effective date to file his petition. This holding comports with that of every one of our sister circuits—six to date—to consider the proper application of the new limitation periods found in § 2244(d) or § 2255 (the analogous statutory provision governing habeas petitions filed by *federal* prisoners). *See Flores*, 135 F.3d at 1002–04 (§ 2255); *Burns*, 134 F.3d at 110–12 (§ 2244(d) and § 2255); *Calderon*, 128 F.3d at 1286–87 (§ 2244(d)); *Simmonds*, 111 F.3d at 744–46 (§ 2255); *Peterson v. Demskie*, 107 F.3d 92, 93 (2d Cir.1997) (§ 2244(d)); *Lindh v. Murphy*, 96 F.3d 856, 865–66 (7th Cir.1996) (en banc) (dicta), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *see also Andrews v. Johnson*, 976 F.Supp. 527, 531–32 (N.D.Tex.1997) (§ 2244(d)); *Dickerson v. Stalder*, 975 F.Supp. 831, 832 (E.D.La.1997) (§ 2244(d)); *Kapral v. United States*, 973 F.Supp. 495, 499 (D.N.J.1997)(§ 2255); *United States v. Ramos*, 971 F.Supp. 199, 202 n. 2 (E.D.Pa.1997) (§ 2255); *Martin v. Jones*, 969 F.Supp. 1058, 1060–61 (M.D.Tenn.1997) (§ 2244(d)); *Duarte v. Hershberger*, 947 F.Supp. 146, 148–49 (D.N.J.1996) (§ 2244(d)).[4] We therefore turn to defining a "reasonable period" in this context.

---

**3.** In view of the Supreme Court's teaching in *Wilson*, its progenitors and progeny, it is unclear whether, as a constitutional matter, the new limitation period could apply in the manner urged by the Commonwealth even if Congress so intended. *But see Flores*, 135 F.3d at 1004–05 & n. 16 (suggesting that an express congressional intent to do so would be relevant to the analysis); *Simmonds*, 111 F.3d at 745 (same). However, because no evidence of such intent exists here, we need not resolve that question. *See Jimenez v. BP Oil Inc.*, 853 F.2d 268, 270 (4th Cir.1988)

("It is well established that a court should avoid deciding a constitutional question when it can dispose of a case on another basis."). It suffices to view the *Wilson* principle as informing the analysis under *Landgraf*, as the Fifth and Tenth Circuits implicitly have done.

**4.** Like the district court here and the Commonwealth, many of the district courts holding to the contrary fail to engage in a full *Landgraf* analysis, and none acknowledge the principle articulated in the *Wilson* line of cases. *See, e.g., Clarke v.*

## III.

■ Pritchard filed his habeas petition within one month after the enactment of the AEDPA. Undeterred, the Commonwealth contends that even if the statute must permit prisoners a reasonable time after the effective date to file a habeas petition, Pritchard waited an unreasonable period. This argument has no merit. Pritchard certainly could have brought his petition sooner than he did. But, prior to the AEDPA, federal law generally imposed no obligation on him to do so. The new limitation period surely seeks to eradicate the sort of delay that existed under the old habeas regime. However, one can hardly imagine a prisoner acting more promptly than Pritchard did once he had notice of the newly-enacted limitation period.

When a new limitation period would completely bar existing claims, courts traditionally have provided litigants with " 'the balance of the time unexpired according to the law as it stood when the amending act [wa]s passed, provided that it shall never exceed the time allowed by the new statute.' " *Flores,* 135 F.3d at 1005 (quoting *Culbreth v. Downing,* 121 N.C. 205, 28 S.E. 294 (1897)); *see also Duarte,* 947 F.Supp. at 149 (collecting cases). Of course, if the new limitation period is very long, a party need not be furnished the entire length of the new period in satisfaction of the "reasonable period" requirement. *See Block,* 461 U.S. at 286 n. 23, 103 S.Ct. 1811 (discussing new twelve-year limitation period). In this case, however, the AEDPA provides for a new limitation period "short enough that the 'reasonable time' [required] and the one-year statutory period coalesce." *Lindh,* 96 F.3d at 866. We have followed this approach

in other contexts when applying a newly-enacted, short limitation period. *See, e.g., The Fred Smartley, Jr. v. Pennsylvania Sugar Co.,* 108 F.2d 603, 607–08 (4th Cir. 1940).

Following it here seems particularly appropriate. Fair notice obviously carries great import when limiting the time afforded a prisoner to seek a writ of habeas corpus, the "fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." *Harris v. Nelson,* 394 U.S. 286, 290–91, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). Given that Congress found it reasonable to provide a habeas petitioner "placed on notice of this time constraint" an entire year to prepare and file a habeas petition, it does not seem unreasonable to hold "that petitioners whose state court proceedings concluded before April 24, 1996," also deserve "one year *with notice.*" *Burns,* 134 F.3d at 111 (emphasis added). Moreover, considering that the courts have now been "grappl[ing] with the AEDPA and the time-bar limitation" for two years, it is not untoward to allow inmates one year to understand and comply with these new provisions. *Dickerson,* 975 F.Supp. at 833.

We note that the vast majority of courts addressing this question similarly have held that a "reasonable period" means one year from the effective date of the AEDPA—i.e., that prisoners whose convictions became final any time prior to the effective date of the AEDPA had until April 23, 1997, to file their § 2254 petition or § 2255 motion.[5] *See Flores,* 135 F.3d at 1005–1006; *Burns,* 134 F.3d at 111; *Calderon,* 128 F.3d at 1287; *Simmonds,* 111 F.3d at 746; *Lindh,* 96 F.3d at 866 (dicta); *Andrews,* 976 F.Supp. at 532;

---

*United States,* 955 F.Supp. 593 (E.D.Va.1997) (§ 2255); *Curtis v. Class,* 939 F.Supp. 703 (D.S.D.1996) (§ 2244(d)); *Harold v. United States,* 932 F.Supp. 705 (D.Md.1996) (§ 2255); *Griffin v. Endicott,* 932 F.Supp. 231 (E.D.Wis. 1996) (§ 2244(d)); *United States v. Bazemore,* 929 F.Supp. 1567 (S.D.Ga.1996) (§ 2255).

**5.** Only *Peterson* and *Ramos* have deviated from this path. In *Peterson,* the Second Circuit stated in dicta that it saw "no reason to accord a full year after the effective date of the AEDPA" but did not "think that the alternative of a 'reasonable time' should be applied with undue rigor"; the court then held that a petition filed on July 6, 1996, was not time barred by § 2244(d). *Peter-*

son, 107 F.3d at 93. *Ramos* simply concluded that a petition, filed within three months of enactment of the AEDPA, was filed within a reasonable time. *See Ramos,* 971 F.Supp. at 202 n. 2. We agree with the Fifth Circuit that the Second Circuit's "ad hoc" approach provides an unworkable solution. *See Flores,* 135 F.3d at 1005. In addition to being the more equitable approach, the bright-line rule we have adopted provides for "ease of administration, consistency and predictability." *Id.* at 1006 n. 19 (internal quotation marks omitted). The Second Circuit's case-by-case approach conspicuously lacks these features.

·

*Dickerson,* 975 F.Supp. at 832; *Kapral,* 973 F.Supp. at 499; *Martin,* 969 F.Supp. at 1061; *Duarte,* 947 F.Supp. at 149. Stated differently, " '[n]o petition [or motion] filed on or before April 23, 1997—one year from the date of AEDPA's enactment—may be dismissed for failure to comply with [§ 2244(d)'s. or § 2255's] time limit.' " *Burns,* 134 F.3d at 111 (quoting *Calderon,* 128 F.3d at 1287).

### IV.

For all of these reasons, the judgments of the district courts are

*REVERSED.*[6]

---

**6.** Given our holding, we need not address appellants' Suspension Clause argument.